In re CANAL BANK & TRUST CO. (GOODMAN & BEER CO., Inc., Intervener).

No. 15053.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1936.

Dufour, St. Paul, Levy & Miceli, of New Orleans (Rene J. Waguespack, of New Orleans, of counsel), for appellant.

Rittenberg & Rittenberg, and Leslie Moses, all of New Orleans, for appellee.

JANVIER, Judge.

Although the facts of this case are set forth in our original opinion reported in 167 So. 485, we feel that they should be briefly restated so that this opinion may be clearly understood without the necessity of referring to the earlier one. These facts we find to be correctly stated in the brief of intervener, as follows:

"On November 29, 1932, Goodman & Beer Company, Inc. placed with the Canal Bank & Trust Company for collection, a draft on Boero Napoli & Cia., Rosario, Argentina, for the sum of $810.00. The Canal Bank & Trust Company forwarded the item to the National City Bank of New York at Rosario, Argentina, for collection, with instructions to remit the proceeds to the National City Bank of New York at New York, and with further instructions to credit the account of the Canal Bank & Trust Company. The National City Bank, through its Argentina branch, collected the item, and on February 27, 1933, the account of the Canal Bank & Trust Company with the National City Bank of New York at New York was credited with the amount collected. On March 1, 1933, the Canal Bank & Trust Company received advice from the National City Bank of New York, New York, that the item had been paid and that the account of the Canal Bank & Trust Company had been credited with the said amount.

"On March 1, 1933, the Canal Bank & Trust Company credited the account of Goodman & Beer Company, Inc., with the amount of the draft and mailed the customary credit advice, which credit advice was received by Goodman & Beer Company, Inc., on March 2, 1933. In the past when the Canal Bank & Trust Company received a draft for collection after they collected it they had been in the custom of crediting the account of Goodman & Beer Company, Inc. and sending it a credit advice, and no objection had been raised to these transactions. Goodman & Beer Company, Inc. had no knowledge of the credit to its account on March 1, 1933, and did not know of said credit until it received the customary credit advice on March 2, 1933.

"No deposit slip was used in connection with this deposit, whereas Goodman & Beer Company, Inc. was a depositor of the Canal Bank and had used deposit slips in making other deposits.

"The Canal Bank & Trust Company closed at 3 o'clock p. m. on March 1, 1933, in accordance with Rule 1, Section 5 of the New Orleans Clearing House Association."

There is one—and only one—question now before us for determination, and that is, whether the fact that intervener did not receive notice that the collection had been made until after the bank had ceased to do business on an unrestricted basis operates to create a privilege in favor of that corporation on the assets of the said bank.

When, on November 29, 1932, the draft was placed by Goodman & Beer with the bank for collection, it cannot be denied that there was an understanding between the bank and the Goodman & Beer Company that the proceeds, when received, would be placed on deposit in the said bank to the credit of Goodman & Beer Company. Nor can it be denied that the bank had established the custom of sending a credit memorandum stating that such proceeds had been collected and had been deposited to the credit of the said company. Had such memorandum been received prior to the time at which the bank ceased to operate on an unrestricted basis, there can be no doubt that the said corporation would have had no privilege.

But it is the fact that the said credit memorandum was not received until after the funds could no longer be withdrawn which intervener contends establishes its right to the privilege. In other words, it contends that the relationship of principal and agent, which, it maintains, is the status which is recognized by Act No. 63 of 1926 as creating the right to the privilege, does not terminate until the agent, whose duty it is to make the collection, has not only made the collection but has notified the principal that it has done so.

But the statute under which and under which alone the privilege is claimed—it being conceded that there is no equitable lien recognized here—does not permit of such interpretation. For convenience we again set forth section 1 of the often referred to Act No. 63 of 1926:

"Be it enacted by the Legislature of Louisiana, That when any bank receives as agent (whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes any money on the same, and has not deposited same to the credit of said principal, the principal shall have a privilege on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank, which privilege shall be superior to the claims of all depositors of said agent bank, the claims of all creditors of said agent bank having no privilege and to all other general privileges on the property and assets of said agent bank, except those for law and judicial charges."

As we read that section, the existence of the privilege is made to depend on the nature of the agreement which exists between the bank and the customer when the draft, or check, or other item, is placed with the bank. It is only where it is left with the bank for collection and remittance, or delivery, that the privilege is granted and the privilege is made to depend in no way and to no extent upon whether the principal receives knowledge of the fact that the collection has been made. The purpose of the framers of the statute appears to us to be obvious and is recognized in the decision rendered by the Supreme Court in Re Hibernia Bank & Trust Co. (Pan American Life Insurance Co., Intervener), 169 So. 464, 476, in which that court quoted with approval an elaborate opinion of Judge H. C. Cage of the civil district court in which he discussed the reasons which led to the enactment of that legislation. The legislators recognized that persons dealing with banks might not care to trust their funds to them if they were to be mingled with other general funds in the bank's vaults, but that they might nevertheless find it necessary to intrust to those banks the duty of collecting foreign items. It was obviously felt that in such cases an owner of such an item should be given the right to say to such a bank: "Collect this for me and send the proceeds to me, or deliver them, to me, but do not mingle them with your own funds."

In such cases it was seen that for practical reasons the collected fund must mingle with the other funds during the process of remittance, and that therefore, since the identical "specie" or "Dollars" could not be kept separate, the owner of those funds should be given a privilege on the general funds.

On the other hand, it was recognized that, where persons select banks as their depositories and, relying on the strength and solvency of those banks, permit their funds to be mingled with the general funds of those banks and to be kept there, they should be placed in the same category with all other depositors and not given privileges. Therefore, when a person leaves with a bank an item for collection, with instructions to collect it and to deposit the proceeds to his credit as a general depositor, the act of 1926 has no application whatever. Until the funds are collected, they belong to him and he needs no privilege because the bank is acting as his agent, and, if the collected funds have not been mingled with the funds of the bank and are still subject to identification, the owner of the item left for collection and deposit may claim those segregated and identifiable funds, but he has no privilege, because the privilege is granted only by the act of 1926, and that act does not recognize a privilege in favor of one who leaves an item for collection and deposit. Bearing this in mind, it becomes immediately obvious that whether or not the owner of the collected item has knowledge that the collection has been made is of no importance at all.

It is contended that this view deprives such a customer of a bank of his right to the proceeds of such an item should the bank fail before the collection is made. We do not think so because in such case the proceeds, as we have already said, if not collected prior to the closing of the bank, belong to the customer, not as the result of any statutory privilege, but as owner.

It is also argued that the view we take with reference to the question of notice deprives the owner of the deposit of the right to withdraw it, because, it is said, he cannot withdraw the fund until he has received notice that it is in the bank, and that, since he does not receive the notice until after the bank has closed, he has no opportunity to withdraw it. That is a misfortune which results from a status which he has voluntarily created. As a

matter of fact, he has the actual right to withdraw the funds the moment they are credited to his account. That he does not know that he has this right is his misfortune, but his legal status is not changed thereby.

We find a further argument on behalf of intervener that, so long as the relationship of principal and agent continues, the privilege created by the act of 1926 also continues to exist, and that here that relationship continued until the receipt of the notice by intervener that the deposit had been made, and from this premise it is contended, on behalf of intervener, that the privilege continued to exist until after the bank had ceased to do business on an unrestricted basis. But the premise is false in two particulars.

In the first place, the statute does not grant a privilege, even during the process of collection, to one who places the item with the bank for collection and deposit, but, as we have said, only to one who places such item with the bank "for collection and remittance, or delivery," and in the second place the premise would be false even if the act specifically granted the lien during the existence of the relationship of principal and agent, because, under the facts which we have before us, that relationship had fully and completely terminated when the collection had been made and the proceeds under the implied authority resulting from the established custom had been mingled with the general funds of the bank. The mandate had been fully performed. All that remained was for the agent to advise the principal that the task had been completed.

It is true that in Corpus Juris, vol. 48, p. 591, § 6, verbum "Payment," appears the following: "Where the debtor has authority to make payment by depositing the money, he is ordinarily bound to give notice of the deposit to the creditor, and a mere deposit cannot effectuate payment where the creditor has no knowledge or notice of it, even though, in ignorance of the state of his account, he uses or withdraws a portion of the money so deposited. A deposit over which the debtor retains control does not constitute a payment."

We believe the above to be a correct statement of the law applicable to the situation therein set forth. But that is not the principle which would have been here involved even if there were a privilege created in the relationship of principal and agent. The question would then be not whether a debt has been paid, but whether a mandatary has carried out his duty. The mandate required the bank to collect and deposit the money. That was done and, though the depositor had no knowledge that the deposit had been made, the mandate, as we have said, was carried out and the fund was available to the depository and it could have been withdrawn.

■ There can be no doubt that we are not privileged to give a broad or liberal interpretation to a statute of this kind. The Supreme Court, in Re Liquidation of Hibernia Bank & Trust Co. (Intervention of Pan-American Life Ins. Co.), supra, in discussing the necessity for strictness in interpreting this same statute and in overruling an earlier interpretation given by the court in Re Liquidation of Hibernia Bank & Trust Co. (Jones County, Intervener), 181 La. 335, 159 So. 576, said: "In order to grant the privilege claimed by Jones County, the majority opinion placed a liberal rather than a strict construction upon the provisions of the act in favor of the claimant of the privilege, contrary to the established jurisprudence."

It would require not only a broad interpretation, but, rather, a rewriting of the statute to grant a privilege under the circumstances set forth here.

For the reasons assigned it is ordered, adjudged, and decreed that the original decree rendered by us be and it is recalled and annulled, and it is now ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and that the claim of intervener for a privilege to the extent of $810 with legal interest from judicial demand, be and it is rejected.

All at the cost of intervener.

Original decree recalled; judgment appealed from reversed.

WESTERFIELD, J., dissents.